CHRISTIAN E. MAPLES v. MATTIE V. HORTON AND HUSBAND, W. T. HORTON.

(Filed 29 January, 1954.)

**1. Deeds § 16b—**

Where the owner subdivides a tract of land and sells lots therein by deeds containing covenants restricting the use of the land pursuant to a general plan of development, such restrictions are valid and are enforceable by any grantee against any other grantee.

**2. Same—**

Where the owner, in subdividing and selling lots in a development, inserts restrictive covenants in his deeds, but provides that such restrictions are inserted for the benefit of the remaining land of the grantors, their heirs and assigns, and retains the right in grantors to release any of the restrictions and sell any part of the remaining land free from such restrictions, *held* the development is not according to any general plan or scheme, and such restrictions may not be enforced by the grantees *inter se.*

**3. Same—**

Restrictive covenants in a deed may be enforced as personal covenants only by the grantor or his executor or administrator, and may not be enforced by an heir, devisee or assignee of the grantor.

**4. Same—**

In the husband's deed containing restrictive covenants the wife joined for the purpose of relinquishing her inchoate right of dower. The husband died leaving a will devising the remaining lands in the development to the wife. *Held:* The wife, as devisee, may not enforce the restrictions as personal covenants.

**5. Same: Husband and Wife § 12c—**

Where a married woman joins in her husband's deed solely for the purpose of relinquishing her inchoate right of dower, she is not bound by any covenants contained therein, nor may she enforce as personal covenants restrictions contained therein, since she conveys nothing by the deed but merely relinquishes her dower right.

APPEAL by plaintiff from *Pless, J.,* at Chambers in Carthage, 30 September, 1952. From MOORE.

This action was instituted on 6 August, 1951, for the purpose of enforcing certain restrictive covenants and obtaining equitable relief by way of permanent injunction against the defendants to restrain them from violating such covenants.

The facts essential to an understanding of the questions involved in this appeal are as follows:

1. By deed dated 30 April, 1920, recorded in the office of the Register of Deeds of Moore County, North Carolina, W. A. Blue and others conveyed to Frank Maples a tract of land containing 66.12 acres in Sandhills Township, Moore County, North Carolina. In 1927, Frank Maples subdivided a portion of the above tract of land into lots and blocks, and caused a plat thereof, designated as "Map of Pine Ridge, Southern Pines, N. C.," to be recorded in Map Book 1, Section 1, page 41, in the office of the Register of Deeds in the aforesaid county and state, on 20 June, 1927.

2. By deed dated 31 May, 1929, executed by M. N. Sugg and wife, and duly recorded, Frank Maples acquired title to a tract of land consisting of 37.35 acres, more or less, which lies immediately adjacent to and northeast of said 66.12 acre tract.

3. In March, 1930, Frank Maples caused all of the 66.12 acre tract and all of the 37.35 acre tract to be laid off in lots and blocks, which included the subdivision referred to in paragraph one above. The larger subdivision was also known as Pine Ridge, Southern Pines, N. C., and a map thereof was recorded in Map Book 2, at page 59, in the office of the Register of Deeds in the aforesaid county and state, on 20 February, 1936.

4. At the time of acquiring the 37.35 acre tract, Frank Maples executed a purchase money deed of trust thereon which was later foreclosed by suit and sold by a commissioner and purchased by Harold Green and others. The deed therefor was executed by the commissioner on 19 June, 1936,

and duly recorded in the office of the Register of Deeds in the aforesaid county and state, on 15 July, 1936.

5. Frank Maples and wife, Christian E. Maples, sold a substantial number of lots in that portion of the subdivision which lies within the boundaries of the 66.12 acre tract. No lots were sold in the area of the subdivision which lies within the 37.35 acre tract.

6. The deeds for all the lots sold, except two, contain certain restrictions, and those pertinent to this appeal are as follows:

"(1) Whenever at any time the party of the second part, her (his or their) heirs, assigns, or lessees shall erect a dwelling on the premises hereby conveyed, the same shall cost not less than $3,500.00, and the plan or design shall first be submitted to and approved by the parties of the first part.

"(2) The party of the second part shall not conduct or permit to be conducted on said premises any mercantile business of any description, or use said premises for anything except dwelling house and garage purposes."

The deeds containing restrictions, also contain the following:

"(5) The foregoing conditions are deemed as inserted herein as restrictions for the benefit of the remaining land of the parties of the first part, their heirs or assigns, and said parties of the first part, their heirs and assigns, retain, however, the right to release any of said conditions and to sell any part of its (*sic*) remaining land free from all or any conditions at their discretion."

7. Lot 13 in Block 2 of the subdivision was sold without restrictions, but later repurchased by the grantor, Frank Maples, and thereafter sold with restrictions. Lot 9 in Block 2 was sold without restrictions and combined into a single curtilage with other lots sold with restrictions.

8. Frank Maples died in November, 1949, leaving a last will and testament which has been duly probated in the office of the Clerk of the Superior Court of Moore County, North Carolina, in which the testator devised all his property of every kind and descriptions to his wife, Christian E. Maples, the plaintiff herein.

9. On 3 March, 1950, the plaintiff entered into an agreement with Wm. F. Bowman whereby she undertook to release the restrictions contained in the deeds from Frank Maples and wife, Christian E. Maples, for Lots 3 and 4 in Block 1 of the subdivision. After the institution of this action, the plaintiff purchased Lots 3 and 4 from Wm. F. Bowman and wife, and filed of record in the office of the Register of Deeds of the aforesaid county and state, a Declaration of Intent in which she states it to be her purpose when she sells the lots to impose the identical restrictions in her deed or deeds which were originally contained in the conveyances from Frank Maples and his wife, Christian E. Maples, to Wm. F. Bowman.

10. Frank Maples and wife, Christian E. Maples, on 28 August, 1945, conveyed to Marian Nidy of Summit County, State of Ohio, Lots Nos. 1, 2, 3, 4, 5, 6 and 7 in Block 1 of the subdivision as shown on the map of "Pine Ridge, Southern Pines, N. C.," and modified the restrictions therein so as to permit the grantees to carry on their profession as chiropractors in any dwelling they might erect on the premises. Thereafter, on 3 July, 1951, Marian Nidy, acting by and through an attorney in fact, conveyed the above lots to the defendant, Mattie V. Horton.

11. Mattie V. Horton and her husband, W. T. Horton, immediately after the purchase of the property, undertook to establish and maintain a camp for transients traveling in trailers and did begin the construction and maintenance of such a camp.

The plaintiff obtained a temporary order on 8 August, 1951, restraining the defendants from maintaining on their premises in the Pine Ridge Subdivision a trailer camp, or using the property for similar purposes, and the order directed the defendants to remove the trailers and the camp located thereon from the premises. The order further directed the defendants to appear in Carthage, North Carolina, 12:00 o'clock noon on 15 August, 1951, to show cause why the order should not be made permanent. The hearing on the show cause order was continued by consent to be heard in Monroe, North Carolina, to 21 September, 1951, before his Honor Dan K. Moore, who signed the original order, and who continued the restraining order until the final hearing.

The cause came on for final hearing before Pless, J., upon an agreed statement of facts, the essential parts of which are hereinabove set out. It was agreed his Honor might take the matter under consideration and render his decision later out of the county and the district. Thereafter, the trial judge filed his judgment, dated 7 April, 1953, holding the restrictions contained in the deed to defendants are not enforceable, dismissing the restraining order and taxing the costs against the plaintiff. The plaintiff appeals, assigning error.

*McKeithen & McConnell for appellant.*
*Rowe & Rowe for appellees.*

DENNY, J. This appeal requires the determination of two questions: (1) Do the covenants and restrictions in the deeds for lots sold by the developer, Frank Maples, negative a general plan or scheme for the development of the area of land in question for residential purposes? (2) If so, may the plaintiff enforce such restrictions as personal covenants? In our opinion the answer to the first question must be in the affirmative, and to the second question, in the negative.

The law generally applicable to a plan or scheme for imposing restrictions upon land for particular purposes is succinctly stated in 26 C.J.S., Deeds, section 167, page 548, *et seq.*, as follows: "Where the owner of a tract of land subdivides it and sells distinct parcels thereof to separate grantees, imposing restrictions on its use pursuant to a general plan of development or improvement, such restrictions may be enforced by any grantee against any other grantee, either on the theory that there is a mutuality of covenant and consideration, or on the ground that mutual negative equitable easements are created." *Craven County v. Trust Co.*, 237 N.C. 502, 75 S.E. 2d 620; *Sedberry v. Parsons*, 232 N.C. 707, 62 S.E. 2d 88; *Higdon v. Jaffa*, 231 N.C. 242, 56 S.E. 2d 661; *Vernon v. Realty Co.*, 226 N.C. 58, 36 S.E. 2d 710; *Brenizer v. Stephens*, 220 N.C. 395, 17 S.E. 2d 471; *Franklin v. Elizabeth Realty Co.*, 202 N.C. 212, 162 S.E. 199; *Bailey v. Jackson*, 191 N.C. 61, 131 S.E. 567; *Johnston v. Garrett*, 190 N.C. 835, 130 S.E. 835; *Homes Co. v. Falls*, 184 N.C. 426, 115 S.E. 184. "That covenants reasonably restricting the ownership, use, or occupancy of land, inserted in deeds as a part of a general scheme or plan of development, for the benefit of all owners of property within the development, are valid is conceded." *Vernon v. Realty Co., supra;* 14 Am. Jur., Covenants, Conditions and Restrictions, section 206, page 616.

In the instant case, it will be noted that in each deed in which restrictions were inserted, it was also provided that the restrictions or conditions in the deed were inserted therein for the benefit of the remaining land of the grantors, their heirs or assigns, and further that the grantors retain "the right to release any of said conditions and to sell any part of its (*sic*) remaining land free from all or any conditions at their discretion." It follows, therefore, that the subdivision involved on this appeal has never been subject to any general plan or scheme whereby the restrictive covenants in the deeds referred to above could have been enforced by the grantees *inter se*. *Phillips v. Wearn*, 226 N.C. 290, 37 S.E. 2d 895; *Humphrey v. Beall*, 215 N.C. 15, 200 S.E. 918.

In the case of *Humphrey v. Beall, supra,* Winborne, J., in speaking for the Court said: "The right to change the restrictions as to lots sold, and the right to sell the unsold lots without restrictions, . . . refute the idea of a general plan for residential purposes to be exacted alike from all purchasers, and to be for the benefit of each purchaser." *Higdon v. Jaffa, supra; Phillips v. Wearn, supra;* 14 Am. Jur., Covenants, Conditions and Restrictions, section 202, page 613; 26 C.J.S., Deeds, section 167 (c), page 555; *Ringgold v. Denhardt, 136 Md. 136, 110 A. 321.*

In light of the conclusion we have reached on the first question posed, it is not necessary to discuss what effect the loss of part of the subdivision by foreclosure, the modification of the restrictions contained in the deeds

to Wm. F. Bowman, conveying to him Lots 3 and 4 in Block 1, or the execution of deeds to Lots 9 and 13 in Block 2 without restrictions, had on the purported general plan or scheme for development and sale of the property for residential purposes. *Phillips v. Wearn, supra; Humphrey v. Beall, supra; DeLaney v. Hart,* 198 N.C. 96, 150 S.E. 702; *Ivey v. Blythe,* 193 N.C. 705, 138 S.E. 2; *Davis v. Robinson,* 189 N.C. 589, 127 S.E. 697; *Snyder v. Heath,* 185 N.C. 362, 117 S.E. 294.

The decision in the case of *Starmount Co. v. Memorial Park,* 233 N.C. 613, 65 S.E. 2d 134, relied upon by the appellant, involved a factual situation distinguishable from that on the present record. Hence, it is not controlling on this appeal.

It is apparent that the restrictions contained in the deed from Frank Maples and wife, Christian E. Maples, to Marian Nidy, and incorporated by reference thereto in the deed from Marian Nidy to the defendant Mattie V. Horton, are not enforceable except as personal covenants. *Phillips v. Wearn, supra; Thomas v. Rogers,* 191 N.C. 736, 133 S.E. 18; *Snyder v. Heath, supra.*

The present plaintiff is the owner of all the unsold lots in the development known as Pine Ridge, Southern Pines, N. C., under and by virtue of the provisions in the last will and testament of her late husband, Frank Maples. However, if she has the right to enforce the restrictions under consideration, it must be as a grantor in the deed to Marian Nidy and not by reason of the fact she is the present owner of the unsold lots in the subdivision. "One cannot at common law maintain any action upon a personal covenant merely by force of the fact that he is the successor in title of the owner with whom such covenant was made." 14 Am. Jur., Covenants, Conditions and Restrictions, section 39, page 514; *Parker v. Beasley,* 40 N. Mex. 68, 54 P. 2d 687; *Willcox v. Kehoe,* 124 Ga. 484, 52 S.E. 896, 4 L.R.A. (N.S.) 466, 4 Ann. Cas. 437; *Asher Lumber Co. v. Cornett,* 22 Ky. L. Rep. 569, 58 S.W. 438, 56 L.R.A. 672.

It is further stated in 14 Am. Jur., Covenants, Conditions and Restrictions, in section 43, page 515, that: "The general rule is that only the covenantor or his executors or administrators are bound on a personal covenant. Hence, a personal covenant does not bind the assignee of the covenantor. A personal covenant will not descend to the heir, upon the theory that all personal covenants made by an ancestor terminate with his death. A personal covenant, upon the death of the obligee, goes to his administrator, and he alone is entitled to maintain suit upon the agreement." *Houston v. Zahm,* 44 Ore. 610, 76 P. 641, 65 L.R.A. 799; *Sturgeon v. Schaumburg,* 40 Mo. 482, 93 Am. Dec. 311; *Fitzsimmons v. South Realty Corp.,* 162 Md. 108, 159 A. 111.

The authorities seem to hold that a married woman who joins her husband in the execution of a deed to his property, merely to release her

inchoate right of dower, conveys nothing and is not bound by the covenants in such deed. 26 Am. Jur., Husband and Wife, section 180, page 801.

Likewise, in 41 C.J.S., Husband and Wife, section 39, page 494, *et seq.,* it is said: "As a general rule a married woman joining her husband in the execution of a conveyance of his lands for the sole purpose of releasing her inchoate rights therein is not bound by the covenants contained in such deed, and a title afterward acquired by her will not by force thereof pass to the grantee therein; nor is there any liability thereon in jurisdictions in which the statutes providing for liability of a married woman on her covenants of title are limited to conveyances of her separate estate, . . . Her joinder in the execution of the instrument does not operate as to her by way of passing an estate; it operates as to her, not as a conveyance, but as a release, and does not constitute her a grantor of the premises or vest in the grantee any greater or other estate than such as is derived from the conveyance of the husband, nor, in such case, is the wife a surety or guarantor." *Snoddy v. Leavitt,* 105 Ind. 357, 5 N.E. 13; *Weidler v. Floran,* 105 Ind. App. 564, 13 N.E. 2d 330; *Shelton v. Deering,* 49 B. Monroe's Rep. (Ky.) 405; *Williams v. Thomas,* 285 Ky. 776, 149 S.W. 2d 525; *Warner v. Flack,* 278 Ill. 303, 116 N.E. 197, 2 A.L.R. 423; *Sunfield v. Brown,* 171 Okla. 395, 42 P. 876; *Humbird Lumber Co. v. Doran,* 24 Idaho 507, 135 P. 66; *Agar v. Streeter,* 183 Mich. 600, 150 N.W. 160, L.R.A. 1915D, 196, Ann. Cas. 1916E, 518. See also *Deans v. Pate,* 114 N.C. 194, 19 S.E. 146.

In *Shelton v. Deering, supra,* it is said: ". . . a wife uniting with her husband in a conveyance of his land, in which she has no interest but the potential right of dower, incurs no obligation by reason of any collateral and merely personal covenant which may be inserted in the deed, and much less by any representation which it may contain. Such covenants or representations, though in form joint, must be regarded as intended to be the acts of the husband alone, and as operative upon him only and not upon the wife, who unites in the deed for the purpose of barring her right of dower, and cannot be presumed to have entered into all the particulars of a contract in which she has so remote and indirect an interest."

In the case of *Weidler v. Floran, supra,* the Indiana appellate Court said: "It can hardly be said that the act of the wife in joining her husband in the execution of a deed in his lands for the sole purpose of releasing her inchoate right (of dower) constitutes her a grantor of the premises or vests in the grantee any greater or other estate than such as is derived from the conveyance of the husband." The Court then quoted with approval the following statement from *Snoddy v. Leavitt, supra:* "Her joinder in the deed operated, not as a conveyance, but as a release of her inchoate right (of dower). The whole title was in the husband.

His deed without the wife joining therein would have carried the whole and the perfect legal title. If the husband make a deed of his lands, that deed carries the perfect legal title; and hence the joinder of the wife therein is of no consequence at all, unless she survives the husband. Her joinder in the deed is a release of her right to claim one-third of the land in case she survives the husband, and nothing more."

It is clear that the plaintiff, Christian E. Maples, at the time she joined her husband, Frank Maples, in the execution of the deed to Marian Nidy, on 28 August, 1945, conveying to the latter the lots involved in this controversy, had no title interest in the lots that was capable of assignment or transfer. She only had an inchoate right of dower in the lots conveyed which she had the capacity to release, but not to convey.

Therefore, in applying the law to the facts revealed by this record, we hold that the restrictions contained in the deed from Marian Nidy to the defendant Mattie V. Horton are not enforceable by this plaintiff.

The judgment of the court below is
Affirmed.